## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MOHMED SOZAB MOMIN, | :: | MOTION TO VACATE |
| Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:18-CR-0352-MLB-RGV-15 |
| UNITED STATES OF AMERICA, | :: | |
| Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:21-CV-1761-MLB-RGV |

## ORDER AND FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of Mohmed Sozab Momin's ("Sozab") counseled motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 294], and motion for evidentiary hearing, [Doc. 345]; the government's response, [Doc. 359]; and Sozab's reply, [Doc. 363].  For the reasons that follow, Sozab's motion for an evidentiary hearing, [Doc. 345], is **DENIED** and it is **RECOMMENDED** that his § 2255 motion be **DENIED**.

## I.  PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a twenty-seven count indictment against Sozab and nineteen co-defendants, charging Sozab in Count One with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; in Counts Two through Twenty-Six with wire fraud, in violation of 18

U.S.C. § 1343; and in Count Twenty-Seven with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956.  [Doc. 1].  Represented by retained counsel Michael Raymond Hauptman ("Hauptman"), Sozab pled guilty to Count One, pursuant to a negotiated plea agreement in which the government agreed to dismiss the remaining twenty-six counts.  [Doc. 159-1 at 1, 4].  Additionally, the government agreed to recommend that Sozab receive a fourteen-level enhancement under U.S.S.G. § 2B1.1(b)(1)(H) because the loss amount reasonably foreseeable to him was more than $550,000 but less than $1,500,000.  [Id. at 5-6].  The plea agreement included the following provision regarding the immigration consequences of Sozab's guilty plea:

> [Sozab] recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including the offense to which [Sozab] is pleading guilty.  **Indeed, because [Sozab] is pleading guilty to this offense, removal is presumptively mandatory.**  Removal and other immigration consequences are the subject of a separate proceeding, however, and [Sozab] understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.  **[Sozab] nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.**

[Id. at 4].  Sozab signed the plea agreement and a separate certification section, which states, in relevant part:

> I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney.  I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. . . No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. . . I am fully satisfied with the representation provided to me by my attorney in this case.

[Id. at 16-17].

At the plea hearing, Sozab was placed under oath and affirmed that he understood the rights he was giving up by pleading guilty.  [Doc. 360 at 3, 8-13]. Sozab understood that his guilty plea "could affect his ability to remain in the United States" and that, "absent contrary advice from an immigration lawyer, [he] should assume that [his] decision to plead guilty will make it very difficult for [him] to . . . remain in the United States."  [Id. at 16-17].  Sozab also confirmed that he had not yet talked to an immigration lawyer.  [Id. at 17].  Hauptman told the Court that Sozab understood the "probability" that he would be removed from the United States, and the government understood "that conspiracy to commit wire fraud would be considered a crime that . . . could cause the revocation of [Sozab's] permanent residency."  [Id. at 17-18].  Sozab acknowledged that he understood "all of that."  [Id. at 18].

Next, the government explained the elements of conspiracy to commit wire fraud, and Sozab confirmed that he understood the charge against him.  [Id. at 19-

3

20].  The government then summarized what the evidence would show if the case went to trial, and Sozab agreed with the summary, including that he participated in a scheme to defraud people of money through false pretenses by collecting "scammed funds, recruit[ing] other individuals to pick up the scammed funds[,] and . . . provid[ing] fake IDs to other members of the conspiracy."  [Id. at 20-24]. Sozab understood that he faced a possible maximum sentence of twenty years of imprisonment, that the Court would decide what sentence to impose, and that he could not withdraw his plea if his sentence was more than he expected.  [Id. at 25-27].  Sozab also understood that the Court would consider the Sentencing Guidelines but was free to impose a sentence outside of the advisory guidelines range up to the statutory maximum.  [Id. at 29].

Sozab confirmed that he had signed the plea agreement and the separate certification section and that he had talked about the agreement with his attorney and was familiar with everything in it.  [Id. at 30-31].  Sozab further understood that the Court was not bound by the sentencing recommendations set forth in the plea agreement.  [Id. at 31-32].  Sozab then confirmed that no one had promised him anything other than the terms of the plea agreement; that no one had threatened, pressured, forced, or intimidated him to plead guilty; that no one had promised him a particular sentence; that he was satisfied with his attorney's representation; and

4

that he had received enough time to talk with his attorney before entering his plea. [Id. at 33-34].   Sozab acknowledged that he was pleading guilty freely and voluntarily and that he was, in fact, guilty.  [Id. at 35].  The Court accepted Sozab's plea.  [Id. at 35-36].

At sentencing, the Court granted Sozab a two-level reduction for his role in the offense, granted the government's motion for a one-level downward departure based on Sozab's cooperation, and determined that Sozab's final guidelines range was thirty to thirty-seven months of imprisonment. [Doc. 357 at 13-15].  The Court sentenced Sozab at the bottom of that range to thirty months of imprisonment.  [Id. at 22; Doc. 230].  Sozab filed a timely notice of appeal, [Doc. 248], which he later voluntarily dismissed, [Doc. 255].

Sozab timely filed this counseled § 2255 motion, arguing that counsel provided him ineffective assistance by failing to give him "timely or accurate advice of the obvious and clear consequence of mandatory deportation" for his guilty plea to an aggravated felony, i.e., a fraud offense with more than $10,000 in loss.  [Doc. 294 at 2].  Specifically, Sozab asserts that counsel did not offer him any advice regarding the immigration consequences of a guilty plea until after he had already entered his plea but alternatively argues that counsel gave advice in an earlier case that was erroneous, i.e., that "any felony conviction would result in

deportation"; that he thus "believed that there was nothing that could be done, through plea negotiations or argument at trial, to change the fact that he would be deported"; and that, had he known that a loss amount of less than $10,000 would allow him to fight removal/deportation, he would not have accepted the plea agreement but, instead, would have taken his chances at trial and challenged the loss amount.  [Id. at 2, 5, 10-11, 14-19].  The government responds that Sozab cannot prevail on his ineffective assistance claim because he has failed to show that he was prejudiced and that an evidentiary hearing is not necessary.  [Doc. 359 at 7-12].  Sozab replies, in pertinent part, that he has established prejudice because, had he known "that the loss amount made a huge difference, and that his lawyer could focus on the loss amount for plea negotiations or to challenge the evidence at trial, he would have made a different decision" and would not have stipulated to facts supporting a loss amount of over $10,000  [Doc. 363 at 8-9].

## II.  DISCUSSION

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "[T]o obtain collateral relief a

prisoner must clear a significantly higher hurdle than would exist on direct appeal."

United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted).    An

evidentiary hearing is not warranted if "the motion and the files and records of the

case conclusively show that the prisoner is entitled to no relief."    28 U.S.C.

§ 2255(b).    Based on the record before the Court, the undersigned finds that an

evidentiary hearing is not required in this case.    See Diaz v. United States, 930 F.2d

832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is

entitled to evidentiary hearing if relief is warranted by facts he alleges, which court

must accept as true, hearing is not required if record conclusively demonstrates that

no relief is warranted).    Accordingly, Momin's motion for an evidentiary hearing,

[Doc. 345], is **DENIED**.

The standard for evaluating ineffective assistance of counsel claims is set

forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).    The analysis is two-

pronged.    However, a court need not address both prongs "if the defendant makes

an insufficient showing on one."    Id. at 697.    A defendant asserting a claim of

ineffective assistance of counsel must first show that "in light of all the

circumstances, the identified acts or omissions were outside the wide range of

professionally competent assistance."    Id. at 690.    Second, a defendant must

demonstrate that counsel's unreasonable acts or omissions prejudiced him.    In order

to demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted).  Counsel is required to provide defendant sufficient information to make an informed and knowing decision to plead guilty, including "all of the information counsel had (and reasonably should have had)" and must offer defendant "reasonable advice" based on that information. Davidson v. United States, 138 F. App'x 238, 240 (11th Cir. 2005) (per curiam). When the "deportation consequences" of a guilty plea are "truly clear," defense counsel has a duty to so inform his client. Padilla v. Kentucky, 559 U.S. 356, 369 (2010).  However, when "the deportation consequences of a particular plea are unclear or uncertain[,] . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Id.  Additionally,

8

> the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Sozab has the burden of affirmatively proving prejudice. Gilreath v . Head, 234 F.3d 547, 551 (11th Cir. 2000).

The Immigration and Nationality Act provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes "an offense that—involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). This is consistent with the provision of the plea agreement that states "removal is presumptively mandatory" for the offense to which Sozab pled guilty. [Doc. 159-1 at 4]. Sozab signed the plea agreement and a separate certification section acknowledging that he had read the plea agreement and carefully reviewed its terms with his counsel. [Id. at 16-17]. Moreover, Sozab affirmed on the record at the plea colloquy that he understood the "probability" that he would be removed from the United States and that he had read the plea agreement, discussed it with his attorney, and was familiar with everything in it.

[Doc. 360 at 17-18, 31]. Accordingly, the record refutes Sozab's claims that counsel did not advise him of the immigration consequences of his guilty plea and that he did not understand those consequences.

Alternatively, Sozab argues that counsel should have advised him that, by stipulating to a loss amount of greater than $10,000, he had no opportunity to avoid deportation and that, had counsel so advised him, he would have contested the loss amount either at trial or at sentencing. [Doc. 294 at 16]. However, the fact that Sozab pled guilty believing that his felony conviction would render him deportable belies his argument that he would have proceeded to trial had he received different advice because the allegedly erroneous advice provided him ample incentive to go to trial to try to avoid deportation if an acquittal was his only hope to do so. Nevertheless, Sozab chose to plead guilty and affirmed that he wanted to plead guilty "regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States." [Doc. 159-1 at 4]. Thus, Sozab cannot show prejudice as he "is not at liberty to ignore the documents [he] signs. . ." Kealy v. United States, 722 F. App'x 938, 946 (11th Cir. 2018) (per curiam).

Sozab also has not met his burden to show prejudice because, on the record before the Court, there is no plausible scenario in which he would be held

responsible for a loss amount of less than $10,000 absent an acquittal. Sozab has not argued that he likely would have been acquitted at trial, but that he wanted to contest the loss amount, yet he has not proffered any evidence to plausibly support finding a loss amount of less than $10,000. Whether Sozab was convicted following trial or upon his guilty plea, he could contest the loss amount at sentencing. Thus, the mere entry of a guilty plea would not deprive Sozab of the opportunity to contest the loss amount. Moreover, the provision of the plea agreement in which the government agreed to recommend that Sozab receive an enhancement because the loss amount reasonably foreseeable to him was more than $550,000 but less than $1,500,000 did not bar Sozab from disputing that amount since, unlike other provisions of the plea agreement, Sozab did not agree to the government's recommendation on loss amount. See [Doc. 159-1 at 5-6].

In any event, Sozab's contention that that "[e]vidence supports that [he] was only responsible for about $5,000 in direct loss to the victims," [Doc. 294 at 18], is both legally and factually inaccurate. During the plea colloquy, Sozab agreed that, in addition to receiving "$4,905.97 in his own name," he had recruited other individuals who also collected scammed funds. [Doc. 360 at 22-24]. The Sentencing Guidelines provide that loss equals "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, cmnt. n.3. "'Actual loss' means the reasonably

11

foreseeable pecuniary harm that resulted from the offense."  Id. at n.3(A)(i).

"'[R]easonably foreseeable pecuniary harm' means pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." Id. at n.3(A)(iv).  Because Sozab recruited others, he was aware that their actions caused loss, and he helped them continue to retrieve victim funds by providing them with fake identifications, see [Doc. 360 at 23]. Consequently, the amount of money retrieved by the individuals Sozab recruited and helped manage was attributable to him, and he has presented no evidence to show that those funds were not sufficient to raise the actual loss amount to $10,000. Therefore, Sozab is not entitled to relief.

### III.  CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a

constitutional right." A movant satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Based on the foregoing discussion of Sozab's sole ground for relief, the resolution of the issue presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

## IV. CONCLUSION

For the reasons stated, Sozab's motion for an evidentiary hearing, [Doc. 345], is **DENIED**, and **IT IS HEREBY RECOMMENDED** that his § 2255 motion, [Doc. 294], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO ORDERED AND RECOMMENDED**, this 6th day of August, 2021.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE